PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

LOUIS EFRAIN COOPER,

*Defendant-Appellant.*

No. 08-7131

Appeal from the United States District Court
for the Northern District of West Virginia, at Martinsburg.
John Preston Bailey, Chief District Judge.
(3:04-cr-00021-JPB-JES-1; 3:05-cv-00108-JPB-JES)

Argued: January 26, 2010

Decided: August 16, 2010

Before WILKINSON, NIEMEYER, and MICHAEL,
Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the
opinion, in which Judge Wilkinson and Judge Michael joined.

**OPINION**

**ARGUED**: Brendan S. Leary, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Wheeling, West Virginia, for Appellant. Paul Thomas Camilletti, OFFICE OF THE UNITED STATES ATTORNEY, Martinsburg, West Virginia, for Appellee. **ON BRIEF**: Sharon L. Potter, United States Attorney, Wheeling, West Virginia, for Appellee.

---

**OPINION**

NIEMEYER, Circuit Judge:

In this proceeding under 28 U.S.C. § 2255, Louis Cooper maintains that his counsel provided him constitutionally deficient legal representation in failing to consult with him about taking an appeal.

Cooper pleaded guilty to two drug trafficking offenses and a related firearms offense, without the benefit of a plea agreement. He submitted his plea pursuant to *North Carolina v. Alford*, 400 U.S. 25, 37 (1970), consenting to punishment even though unwilling to admit his part in the acts constituting the offenses, and the district court accepted the plea.

After objecting to portions of the presentence report, Cooper and the government reached a sentencing agreement under which Cooper withdrew his objections to the report and the government agreed not to seek a sentencing enhancement for Cooper's managerial role in the drug offenses. Cooper and the government also stipulated to a base offense level of 32 under the Sentencing Guidelines, which, with a criminal history category I, would subject Cooper to a Guidelines sentence of 121 to 151 months' imprisonment for the drug trafficking counts.

Accepting the stipulation, the district court sentenced Cooper to the low end of the Guidelines range, imposing a sentence of 121 months' imprisonment for the drug trafficking counts and the mandatory 60-month consecutive sentence for the firearms count.

After sentencing, Cooper never requested that his counsel, S. Andrew Arnold, Esquire, file an appeal, and Arnold never consulted with Cooper on whether to file an appeal.

In this § 2255 proceeding, Cooper requests that his sentence now be vacated on the ground that he received ineffective assistance of counsel when Arnold failed to consult with him about taking an appeal. The district court denied the petition.

We affirm. Because Cooper repeatedly expressed his desire to have the criminal proceeding concluded, received the best possible sentence he could have received under the agreement he entered into with the government, and had no nonfrivolous issues to appeal, we conclude that Cooper has not established, as required by *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), that Arnold was constitutionally ineffective for failing to consult with him about an appeal or that Cooper was prejudiced by Arnold's failure to consult with him.

I

On March 5, 2004, after Cooper delivered approximately 9.2 grams of cocaine to a customer with the understanding that the customer would pay for the cocaine later, the customer agreed to serve as an informant for law enforcement officers. Under the supervision of the officers, the informant then paid Cooper $1,000 for the cocaine two days later.

On March 10, 2004, Cooper, along with two confidential informants, traveled from Mineral County, West Virginia, to Winchester, Virginia, to purchase approximately 80 grams of

cocaine from an individual known as "Carlos." After completing the purchase, Cooper was arrested on the return trip while stopped at a convenience store in Capon Bridge, West Virginia. Law enforcement officers had observed the drug transaction in Winchester and had followed the vehicle to Capon Bridge. Cooper was searched incident to the arrest, and officers found a Kel-Tec Model P-11 9-millimeter handgun in Cooper's waistband and the 80 grams of cocaine in a cup in the backseat of the vehicle, near where Cooper had been sitting.

Cooper was subsequently indicted for one count of possessing cocaine with intent to distribute and for one count of distributing cocaine, in violation of 21 U.S.C. § 841. He was also indicted for one count of using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). Following his indictment, S. Andrew Arnold, Esquire, was appointed to represent Cooper.

Initially, Cooper planned to plead guilty to one drug trafficking count and the firearms count, pursuant to a plea agreement with the government. During the plea colloquy, however, the district court became concerned that Cooper's answers indicated that he believed he was not guilty of the crimes. Accordingly, the district court suspended the colloquy to allow Cooper to withdraw his plea or to consider pleading pursuant to *North Carolina v. Alford*, 400 U.S. 25, 37 (1970) (holding that "[a]n individual accused of a crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime"). A few days later, when the hearing was resumed, Cooper entered an *Alford* plea, without the benefit of a plea agreement, to all three counts of the indictment, and the court accepted the plea. During the course of the plea colloquy, the district court advised Cooper that his right to appeal "will be restricted to the jurisdiction of the Court, the voluntariness of the guilty plea, the effective representation of your lawyer,

and the application of the Sentencing Guidelines in this case," and Cooper responded that he understood the restrictions.

The presentence report prepared for Cooper outlined the offense conduct and presented the probation officer's calculation of the sentencing range under the Sentencing Guidelines. The report indicated that, based on the drug quantities involved in the relevant conduct, the base offense level for Cooper was 32, to be increased two levels for Cooper's managerial role over four individuals, pursuant to U.S.S.G. § 3B1.1(c), for a total offense level of 34. Cooper objected to the presentence report, specifically (1) to the factual circumstances attributed to him, especially in view of his *Alford* plea, (2) to the calculation of drug quantities in the relevant conduct, (3) to the two-level enhancement for his managerial role, and (4) to the determination that he should not receive a reduction in the offense level for acceptance of responsibility. He also made a motion for a downward departure from the Sentencing Guidelines based on the ownership of the firearm, his lack of criminal history, and his role in the offenses.

At the sentencing hearing, the district court overruled two of the objections and scheduled a continuation of the hearing to receive evidence and rule on the remaining objections and his downward departure motion.

At the outset of the second sentencing hearing, Cooper and the government reported that they had reached an agreement whereby Cooper would withdraw his objections to the presentence report and his motion for a downward departure and stipulate to the base offense level of 32, as calculated in paragraph 41 of the presentence report. In exchange, the government agreed not to seek an enhancement for Cooper's managerial role and stipulated to the offense level of 32. Under this agreement, the Sentencing Guidelines range was 121 to 151 months' imprisonment for the drug trafficking counts and a mandatory consecutive 60-month sentence for the firearms offense. Accepting the agreement, the district

court imposed concurrent sentences of 121 months' imprisonment, at the low end of the Guidelines range, on the drug trafficking counts and a mandatory 60-month term of imprisonment on the firearms count, to run consecutively to the terms imposed on the drug trafficking counts. After imposing the sentence, the district court advised Cooper of his limited rights to appeal and informed him that if he wished to appeal, he had to do so within 10 days of the entry of judgment, which was October 28, 2004. Cooper never filed an appeal.

Almost a year later, in October 2005, Cooper filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, asserting, among other things, that Arnold provided him with ineffective assistance of counsel by failing to consult with him about the possibility of taking an appeal. At the evidentiary hearing on the motion conducted by a magistrate judge, Cooper testified that he had wanted to file an appeal and that he had asked Arnold at the close of the sentencing hearing to visit him the next day at the Eastern Regional Jail. Cooper admitted, however, that he never expressed a desire to appeal. He claimed that he did not have time to do so before the marshals removed him from the courtroom. He said that he had intended to ask Arnold to file an appeal when Arnold visited him at the jail. According to Cooper, Arnold responded that he would come to the jail the next day after 1:00 p.m., but he never showed up. Cooper also testified that he had tried to contact Arnold but that he could not get through because Arnold's office did not accept collect calls.

Cooper also offered the testimony of his friend, Peter Zimmerman, who stated that around the time Cooper was sentenced, Cooper asked Zimmerman to help him contact Cooper's wife to get a message to Arnold. Zimmerman called his own parents, who then patched in Cooper's wife so that Cooper could talk to her. As far as Zimmerman could remember, it was "for something for court or something."

Arnold testified that he had no recollection of Cooper asking him to come by the jail the day after the sentencing hearing and that he did not tell Cooper that he would visit him at the jail. He acknowledged that he devoted no further time to the case after the sentencing hearing.

Following the hearing on Cooper's § 2255 petition, the magistrate judge issued a report and recommendation that the petition be denied. The magistrate judge noted that "[b]ecause petitioner testified he intended to instruct Mr. Arnold to appeal, he cannot claim that he was inadequately advised of his right to appeal and did not know he had a right to appeal." Thus, the magistrate judge concluded, "The only question is whether Mr. Cooper instructed Mr. Arnold to appeal his conviction and sentence." After determining that Arnold's testimony was more credible than Cooper's, the magistrate judge found that "[b]ased upon petitioner's waiver of appeal rights in the plea agreement, after not waiving his right to appeal in the proposed *Alford* plea, and the reduction in sentence resulting from the plea agreement for acceptance of responsibility . . . the preponderance of the evidence is that petitioner did not ask Mr. Arnold to file an appeal."

Cooper filed an objection to the magistrate judge's report and recommendation on the ground that the magistrate judge had incorrectly concluded that Cooper had entered into a plea agreement in which he had waived his appeal rights. The district court agreed that Cooper had not entered into a plea agreement containing a waiver of appeal but otherwise adopted the report and recommendation, finding that Cooper did not expressly ask his counsel to file an appeal. In addition, the district court found that Arnold's conduct did not fall below an objective standard of reasonableness because "in light of the stipulation between the parties at sentencing, the Court's instruction regarding petitioner's limited rights to appeal, the Court's instruction regarding petitioner's need to file a notice of appeal, and the fact that petitioner never requested an appeal to be filed, it cannot be said that a rational

defendant would have desired an appeal to be filed." The court accordingly denied Cooper's § 2255 petition.

Pursuant to Cooper's notice of appeal, we entered an order, dated March 12, 2009, granting Cooper a certificate of appealability on the issue of whether "counsel's failure to consult with Cooper about whether to appeal deprived Cooper of the effective assistance of counsel."

II

In support of his claim of ineffective assistance of counsel, Cooper argues that

> Arnold had a reasonable belief that Cooper would have wanted to file an appeal because Cooper entered a plea straight-up to all three counts of the indictment without a plea agreement. In addition, Cooper maintained his innocence throughout the case. As such, Cooper entered a guilty plea pursuant to *Alford* . . . .

Cooper concludes therefore that Arnold's failure to consult with him about an appeal fell below an objective professional standard of reasonableness.

To demonstrate ineffective assistance of counsel, a defendant must show (1) that counsel's representation "fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and (2) that "the deficient performance prejudiced the defense," *id.* at 687. In *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000), the Supreme Court applied the first prong of *Strickland* to hold that the Sixth Amendment generally requires counsel to *consult* with the defendant regarding a direct appeal by "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *See also Frazer v. South Carolina*, 430 F.3d

696, 707 (4th Cir. 2005). But while the Court noted that it "expect[s] that courts evaluating the reasonableness of counsel's performance . . . will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal," it did not adopt a *per se* rule mandating consultation. *Flores-Ortega*, 528 U.S. at 481. The Court explained:

> We cannot say, as a *constitutional* matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient. Such a holding would be inconsistent with both our decision in *Strickland* and common sense. For example, suppose that a defendant consults with counsel; counsel advises the defendant that a guilty plea probably will lead to a 2 year sentence; the defendant expresses satisfaction and pleads guilty; the court sentences the defendant to 2 years' imprisonment as expected and informs the defendant of his appeal rights; the defendant does not express any interest in appealing, and counsel concludes that there are no nonfrivolous grounds for appeal. Under these circumstances, it would be difficult to say that counsel is "professionally unreasonable," as a constitutional matter, in not consulting with such a defendant regarding an appeal.

*Id.* at 479 (citations omitted) (emphasis in original).

Thus, *Flores-Ortega* articulates the rule that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." 528 U.S. at 480. In determining whether a rational defendant would have wanted to appeal, we consider important the facts concerning whether the defendant's conviction followed a trial or a guilty plea;

whether the defendant received the sentence bargained for as part of the plea; and whether the plea expressly reserved or waived some or all appeal rights. *Id.*

When applying *Flores-Ortega*, our court has found a breach of the *Strickland* duty usually because the defendant said something to his counsel indicating that he had an interest in appealing. *See Bostick v. Stevenson*, 589 F.3d 160, 162 (4th Cir. 2009) (defendant stated to his daughter, in open court, "Don't worry, I'll get a[n] appeal, don't worry"); *Frazer*, 430 F.3d at 702 (defendant who received consecutive sentences asked counsel to see "about having time run together" immediately after being sentenced); *Hudson v. Hunt*, 235 F.3d 892, 894 (4th Cir. 2000) (defendant asked counsel "whether or not he could appeal" immediately after he had been convicted by a jury); *United States v. Witherspoon*, 231 F.3d 923, 925 (4th Cir. 2000) (defendant told defense counsel that he "would like [his] case reviewed by a higher court" if the district court did not sustain any of his objections (alteration in original)); *see also United States v. Poindexter*, 492 F.3d 263, 265 (4th Cir. 2007) (finding ineffective assistance of counsel for failure to appeal where the defendant unequivocally told his lawyer to file an appeal even though the defendant waived his appellate rights). In this case, however, Cooper gave no indication that he wanted to appeal. We thus must determine, under the *Flores-Ortega* analysis, whether the circumstances would reasonably have led counsel to conclude that "a rational defendant would want to appeal," thus prompting counsel's duty to consult. 528 U.S. at 480.

While Cooper does not contend that he told Arnold to appeal, he argues that Arnold should have known that a rational defendant in Cooper's situation would have wanted to appeal. Cooper emphasizes that he maintained his claim of innocence to the charges through the entry of an *Alford* plea and that he did not waive any of his appeal rights in the sentencing agreement with the government. These facts alone,

according to Cooper, should have been sufficient to obligate Arnold to consult with Cooper about taking an appeal.

In the particular circumstances of this case, however, we conclude that Arnold was justified in believing that a rational defendant in Cooper's situation would not want to appeal. First, Cooper's actions and words expressed repeatedly and clearly a desire to have the proceedings concluded as quickly as possible. In addition to entering an *Alford* plea, in which Cooper accepted punishment for the crimes without admitting the facts in order to avoid a trial, Cooper stated several times during the plea colloquy that his purpose in pleading guilty was to end the judicial proceedings as quickly as possible. He stated, "I would like to finish this case," and "What's important to me is to have this case resolved. I would say, this case has been a tragedy in my life." He also stated at different times during the colloquy, "I need to give resolution to this situation," and, "I would like to repeat that I would like to finish off this situation." Thus, not only did Cooper not say anything that would have led Arnold to believe he was interested in appealing, he affirmatively indicated to Arnold a strong desire not to continue or prolong the case and to get it behind him.

Second, because Cooper received the sentence he bargained for with the government, his expectations had been met, and no nonfrivolous grounds for appeal remained that would have put Arnold on notice that a reasonable defendant would have wanted to appeal. *See Flores-Ortega*, 528 U.S. at 479-80. Pursuant to the sentencing agreement reached by Cooper and the government, the parties stipulated to a base offense level of 32, the government agreed not to seek an enhancement for Cooper's managerial role, and Cooper agreed to withdraw his objections to the presentence report and his motion for a downward departure. The district court thereafter properly calculated Cooper's Guidelines range for the drug offenses at 121 to 151 months' imprisonment, in addition to the mandatory 60 months' imprisonment for the firearms offense. Coo-

per, having voluntarily withdrawn his objections to the presentence report and his downward departure motion, no longer challenged the calculation. The district court gave Cooper a sentence at the low end of the Guidelines range and even granted his request to recommend incarceration close to his family in Los Angeles.

While it is true that Cooper's *Alford* plea left open the possibility of appealing limited issues, none of those issues was put into play by anything that reasonably observant counsel would have noticed. The *Alford* plea was clearly a voluntary plea entered by Cooper. Indeed, he justified requesting an *Alford* plea by his desire to get the case behind him. Moreover, there was no suggestion that the district court lacked jurisdiction. And, as to the sentence, Cooper received precisely what he had bargained for—a sentence at the low end of the stipulated Guidelines range, along with the recommendation that he be incarcerated near Los Angeles. In the end, Arnold could reasonably believe that he had shaped a proceeding that not only was fair to Cooper but also accomplished everything Cooper wanted. Indeed, he could have objectively concluded that Cooper received the best possible outcome in the circumstances.

As the Supreme Court explained in *Flores-Ortega*, where counsel consults with a client and establishes expectations about the consequences that are likely to follow from a guilty plea, it is "difficult to say that counsel is 'professionally unreasonable,' as a constitutional matter, in not consulting with such a defendant regarding an appeal," if (1) those expectations are met, (2) the defendant does not express any interest in appealing, and (3) counsel concludes that there are no nonfrivolous grounds for appeal. *See Flores-Ortega*, 528 U.S. at 479 (citation omitted). These are precisely the circumstances in this case. Accordingly, we cannot say that Arnold provided *constitutionally* ineffective assistance to Cooper in failing to consult with him about the possibility of taking an appeal.

This is not to say that Arnold's decision not to consult with Cooper was the best decision in the circumstances. To be sure, best practices would advise an attorney in Arnold's position to tie up any loose ends in the case by taking the simple step of consulting with his client at the end of the proceedings. Had Arnold done so in this case, he would have saved both the courts and himself substantial time and resources. Nonetheless, the inquiry under *Strickland* and *Flores-Ortega* is not whether counsel made the *best* decision in the circumstances, but whether he made a *reasonable* decision. Under the facts of this case, we cannot say that it was outside the wide range of professionally competent representation for Arnold not to have consulted with Cooper further.

## III

While we rest our disposition on the first prong of *Strickland*—that Arnold's representation of Cooper was not constitutionally deficient—we note also that Cooper's claim of prejudice would fare no better. While he categorically claimed prejudice, he has provided no fact nor posited any scenario to "demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484.

For the foregoing reasons, the judgment of the district court denying Cooper's § 2255 petition is

*AFFIRMED*.