# United States Court of Appeals
## For the First Circuit

No. 15-2520

UNITED STATES OF AMERICA,

Appellee,

v.

J.C.D.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Pedro A. Delgado-Hernández, U.S. District Judge]

Before

Torruella, Lipez, and Barron,
Circuit Judges.

Víctor J. González-Bothwell, Assistant Federal Public Defender, with whom Eric A. Vos, Federal Public Defender, Vivianne M. Marrero-Torres, Assistant Federal Public Defender, Supervisor, Appeals Section, and Patricia A. Garrity, Research and Writing Specialist, were on brief, for appellant.

Thomas F. Klumper, Assistant United States Attorney, Senior Appellate Counsel, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

May 31, 2017

**BARRON, <u>Circuit Judge</u>.** Juveniles may be tried criminally as adults in federal court if the government moves for the juvenile defendant to be tried as an adult and a federal district court finds that, given the requirements set out in 18 U.S.C. § 5032, it would be appropriate to do so. This case arises from an armed carjacking allegedly committed by J.C.D. in November 2014, when he was seventeen years old. The issue that we must decide concerns whether the District Court erred in granting the government's motion for J.C.D. to be tried as an adult for that armed carjacking. We affirm.

**I.**

On November 10, 2014, J.C.D. was charged in the United States District Court for the District of Puerto Rico with one count of carjacking, in violation of 18 U.S.C. §§ 2119 and 2. Under 18 U.S.C. § 5032, juvenile defendants may be transferred to adult status -- and thus may be tried as adults -- only if the Attorney General certifies that one of three expressly enumerated conditions are met and if a district court also finds, after a hearing, that the transfer would serve the "interest of justice." Under the statute, in determining whether a transfer is in the interest of justice, the District Court must consider "[e]vidence of the following factors" and make "findings with regard to each factor . . . in the record":

> [1] [T]he age and social background of the juvenile; [2] the nature of the alleged offense; [3] the extent and nature of the juvenile's prior delinquency record; [4] the juvenile's present intellectual development and psychological maturity; [5] the nature of past treatment efforts and the juvenile's response to such efforts; [6] the availability of programs designed to treat the juvenile's behavioral problems.

Id.

Here, the government filed a transfer motion, pursuant to § 5032, after J.C.D.'s arraignment and a subsequent detention hearing. The Attorney General concluded that one of the three statutory conditions had been met -- ruling that the offense charged involved a "crime of violence" under § 5032. J.C.D. requested that the court deny the transfer motion, in light of the six statutory factors. The District Court then referred the matter to a Magistrate Judge. Soon thereafter, both parties filed more thorough memoranda in the proceedings before the Magistrate Judge.

After several continuances and a four-day hearing, the Magistrate Judge issued a detailed report and recommendation recommending that the District Court deny the government's motion to transfer. The Magistrate Judge concluded that the transfer would not be in the interest of justice.

In reaching that conclusion, the Magistrate Judge described the facts of the offense as follows:

> At 1:00 a.m., the soon-to-be victim left a Walgreens in Carolina and walked to his car.

> Two males and a female in a Toyota SUV --
> J.C.D. allegedly among them -- laid in wait,
> and once the victim was at his vehicle, the
> SUV blocked his path. The two males got out
> of the SUV brandishing weapons and forced the
> victim into his own vehicle's passenger's
> seat. According to the United States, J.C.D.,
> armed and masked, got into the driver's seat,
> and the other male sat in the rear. J.C.D.
> drove the vehicle away and, pressing his
> weapon to the victim's side, forced the victim
> to turn over his wallet. The victim had little
> cash on him, so he was driven to an ATM and
> made to withdraw. J.C.D. threatened the
> victim, asking if he smelled death. Finally,
> the victim was ordered out of the vehicle and,
> as he ran away, he heard what he believed to
> be two gunshots.

The Magistrate Judge then considered each of the six statutory factors in deciding whether a transfer would be "in the interest of justice" and provided detailed factfinding and analysis with respect to each factor.

The Magistrate Judge recognized that one factor -- "the nature of the alleged offense" -- significantly favored transfer. The Magistrate Judge noted the seriousness of the alleged offense, recounting J.C.D.'s underlying conduct and concluding that "the evidence does suggest that J.C.D. was the primary aggressor: he carried a gun, he drove, he robbed, and, perhaps worst of all, he threatened."

The Magistrate Judge noted that a second factor, "the age and social background of the juvenile," did not point clearly in either direction. In particular, the Magistrate Judge found

-4-

that J.C.D.'s advanced age (seventeen when he allegedly committed the carjacking) favored transfer, while J.C.D.'s social background, and particularly the abuse he suffered as a child, disfavored transfer.

However, the Magistrate Judge found that the remaining four factors pointed in favor of J.C.D.'s view that the transfer was not appropriate.

First, the Magistrate Judge considered that J.C.D. had no "prior delinquency record," a fact that favored, at least somewhat, trying J.C.D. in juvenile proceedings. However, the Magistrate Judge also concluded, in light of J.C.D.'s involvement with drugs, that "while I give J.C.D. credit for his clean record, I cannot read into that fact all that J.C.D. asks."

Second, with respect to J.C.D.'s "present intellectual development and psychological maturity," the Magistrate Judge concluded that psychological maturity entails a sense of right and wrong and "logic mediated by judgment." J.C.D., the Magistrate Judge found, lacked those traits. Thus, this factor, too, the Magistrate Judge held, favored J.C.D.'s position that transfer was not in the interest of justice.

Third, the Magistrate Judge considered "past treatment efforts and the juvenile's response to such efforts," and credited an expert view that future treatment would be helpful to J.C.D. "While J.C.D.'s past record of treatment is spotty," the Magistrate

Judge concluded, "he nonetheless appears to be in a position to benefit from more closely supervised treatment going forward."

Finally, the Magistrate Judge turned to "the availability of programs designed to treat the juvenile's behavioral problems." The Magistrate Judge noted J.C.D.'s limited formal education and the fact that "many of J.C.D.'s problems stem from immaturity, impulsiveness, and lack of judgment." The Magistrate Judge thus held that this factor indicated that a juvenile facility was more appropriate than an adult one, as a juvenile facility's programs would be more fitting for a person with J.C.D's background.

Having considered the six statutory factors, the Magistrate Judge then proceeded to balance them, as the law requires. The Magistrate Judge acknowledged that the alleged crime was a "serious and inherently dangerous one." The Magistrate Judge also noted, however, that there was no evidence that J.C.D. was a leader in the carjacking, even if he was an aggressor. And the Magistrate Judge cited a case in which a district court denied the government's motion to transfer when a seventeen-year-old committed an armed robbery, United States v. A.C.P., 379 F. Supp. 2d 225, 232 (D.P.R. 2005), thus showing that the seriousness of the offense need not override all the other factors.

Although J.C.D. was close to eighteen at the time of the offense, the Magistrate Judge noted that all defendants under that

age still benefit from the presumption that they will be tried as juveniles. The Magistrate Judge explained that, although perhaps this presumption is somewhat weaker for a seventeen-year-old defendant, as here, it still applies.

As for J.C.D.'s history of treatment, the Magistrate Judge found that it did not weigh in favor of transfer. In reaching this conclusion, the Magistrate Judge emphasized the testimony that J.C.D. now has a heightened understanding of the need to improve, and the evidence that he was abused in earlier treatment programs.

The Magistrate Judge closed by finding that "only the nature of the offense weighs strongly in favor of transfer," while "[t]he remaining statutory factors weigh against it or are neutral." Recognizing that one might "reasonably focus on the crime committed and make a recommendation in favor of transfer," the Magistrate Judge instead concluded that "[m]ercy inclines me the other way" given the Magistrate Judge's "hope that treatment will be successful." The Magistrate Judge thus recommended that the transfer motion be denied.

The government timely filed a detailed objection to the report and recommendation. J.C.D. filed none. In November 2015, the District Court granted the government's motion to transfer, contrary to the recommendation of the Magistrate Judge. The District Court's brief opinion reasoned as follows.

First, the District Court stated that it "carefully reviewed the Magistrate Judge's findings" and that the Magistrate Judge's factual findings were "well-supported." However, the District Court reached a different ultimate conclusion regarding transfer because the District Court determined that the six factors, when balanced, "warrant transfer of J.C.D. to adult status in the interest of justice."

After setting forth this conclusion, the District Court recited the facts of the case. Given that J.C.D. allegedly committed "a serious, violent, and senseless offense," the District Court reasoned that "the seriousness of the offense significantly weighs in favor of transfer." The District Court also noted that the Magistrate Judge had found that the record could support granting the motion to transfer, if one were to focus on the nature of the crime committed. As a result of this analysis, the District Court granted the government's motion to transfer.

J.C.D. now appeals from that ruling.

## II.

J.C.D. first argues that, although the District Court made factual findings regarding one of the statutory factors -- the seriousness of the offense -- "[t]he district court, contrary to the statutory mandate, did not make any other factual findings sufficient to satisfy the requirements of § 5032." As J.C.D. is not challenging the factual findings set forth in the Magistrate

Judge's report and recommendation, but is instead contending that the District Court violated the statute by failing to make any factual findings at all as to five of the six statutory factors, our review is de novo. See United States v. Romulus, 949 F.2d 713, 715 (4th Cir. 1991) (remanding when "the district court did not make findings with regard to two of the [statutory] factors").

The District Court did not expressly set forth its own factual findings. But our review of the record reveals to us that the District Court impliedly adopted the factual findings in the Magistrate Judge's report and recommendation. Consider in this regard that the Magistrate Judge made factual findings as to all of the statutory factors, with J.C.D. not objecting as to the Magistrate Judge's findings on any of those factors. Consider, too, that the District Court expressly concluded that the findings made by the Magistrate Judge were "well supported," and that the District Court did so after stating that it had "carefully reviewed" those findings. Consider, further, that the District Court also stated that the Magistrate Judge had conducted a "thorough analysis of both facts and the § 5032 factors," and that the District Court found that the severity of the offense "significantly weighs in favor of transfer."

Thus, we conclude that the District Court did not fail to perform its statutory duty under 18 U.S.C. § 5032, because the District Court adopted (albeit implicitly) the well-considered

-9-

factual findings made by the Magistrate Judge.  See United States v. Male Juvenile E.L.C., 396 F.3d 458, 460 n.1 (1st Cir. 2005) (affirming a district court's order transferring a juvenile to adult status when it "adopted the recommendation of the Magistrate Judge without comment").  As a result, the cases cited by J.C.D. regarding district courts' obligation to make factual findings under § 5032 -- Male Juvenile E.L.C., 396 F.3d 458; United States v. Nelson, 68 F.3d 583 (2d Cir. 1995); and United States v. Juvenile Male #1, 47 F.3d 68 (2d Cir. 1995) -- do not provide a basis for finding a violation of that provision here.  Accordingly, J.C.D.'s first challenge fails.

J.C.D. also contends that the District Court erred by not performing the de novo review of the Magistrate Judge's findings that he contends is required by 28 U.S.C. § 636(b)(1).[1] It appears that J.C.D. is claiming a violation of a statutory

---

[1] Section 636(b)(1)(B) empowers district courts to "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court" of most kinds of motions, including, as relevant here, motions to transfer a juvenile to adult proceedings.  Within fourteen days of a magistrate judge's report and recommendation, "any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court" and the district court then "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).

obligation, and thus, for present purposes, we assume that our review is de novo.

J.C.D. argues that the District Court could not have performed the statutorily required de novo review of the report and recommendation because the District Court did not have access to the testimony of the witnesses who testified at the transfer hearing, given that "the transcript [of the transfer hearing before the Magistrate Judge] was not requested until after the district court had issued its Memorandum and Order." The government does not appear to contest this point.[2] But, even assuming that J.C.D. is right on this point, his argument still fails.

The District Court is only obliged to perform de novo review of disputed portions of the report and recommendation. See 28 U.S.C. § 636(b)(1); Gioiosa v. United States, 684 F.2d 176, 179 (1st Cir. 1982) (finding that the required "de novo determination refers only to matters involving disputed facts"). The only

---

[2] We do note, though, that there is reason to doubt the force of J.C.D.'s contention in this regard, given that it appears that, in the District of Puerto Rico, "[w]ith limited exceptions and contrary to the U.S. District Judges, Magistrate Judges do not have a Court Reporter present during the numerous proceedings held before them. Therefore, unless a transcript is requested following the applicable rules and regulations, no transcript is prepared or available for those proceedings. The content of the hearing, however, is always recorded using a Digital Court Recording 'DCR' program. District Judges have immediate access to DCR audio files, and may listen to the audio files when reviewing a determination made by a Magistrate Judge." United States v. Rentas-Rivera, No. 17-158, slip op. at 2 n.1 (D.P.R. April 18, 2017).

contested portion of the report and recommendation in this case concerns a portion to which the government -- not J.C.D. -- objected. In that objection, the government provided additional detail concerning J.C.D.'s conduct during the carjacking; contended that the report and recommendation failed to make clear that J.C.D. was a leader of the criminal activity, as compared to his alleged co-carjackers; and argued that the report and recommendation failed to fully recount the events that took place in the aftermath of the carjacking that evidenced the significant role that J.C.D. played in carrying out the offense.

We do not see, however, how the District Court's failure to undertake a de novo review of that disputed portion of the report and recommendation -- assuming such a failure -- prejudiced J.C.D. The District Court's account of the carjacking, including J.C.D.'s relative role in the commission of the crime, directly tracked the Magistrate Judge's findings on that issue. The District Court's account of the carjacking and J.C.D.'s role in it was thus more favorable to J.C.D. than was the account set forth in the government's objection to the report and recommendation. In addition, the District Court did not discuss the aftermath of the carjacking at all, thus ensuring that the District Court did not rely on the account set forth in the government's objection. Nor does J.C.D. identify how a review of the portions of the report and recommendation that the government challenged -- but that

J.C.D. did not -- would have led to findings that would have been more favorable to J.C.D. than the report and recommendation, which J.C.D. did not challenge, already was.  As a result, J.C.D. has not identified any error -- even if we assume one occurred -- that would warrant overturning the District Court's ruling.  See Manbeck v. Town of Lewisboro, 333 F. App'x 599, 602 (2d Cir. 2009) (finding erroneous failure to conduct de novo review under section 636(b)(1) to be "harmless because there was no material factual dispute such that the difference in the standard of review would affect the outcome"); United States v. Clark, 754 F.3d 401, 410 (7th Cir. 2014) (finding, in a different context, that "[h]armless error analysis seems particularly appropriate here, where even if there was a [legal] violation, [appellant] has not identified a single reason why he was harmed by the supposed violation").

## III.

For these reasons, the District Court's grant of the government's motion to transfer is **<u>affirmed</u>**.