# United States Court of Appeals
## For the First Circuit

No. 18-1150

TORIBIO ROJAS-MEDINA,

Petitioner, Appellant,

v.

UNITED STATES OF AMERICA,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]
[Hon. Bruce J. McGiverin, U.S. Magistrate Judge]

Before

Torruella, Selya, and Lynch,
Circuit Judges.

Franco L. Pérez-Redondo, Research & Writing Attorney, with whom Eric A. Vos, Federal Public Defender, and Vivianne M. Marrero-Torres, Assistant Federal Public Defender, Supervisor, Appeals Section, were on brief, for petitioner.
Antonio L. Pérez-Alonso, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, were on brief, for respondent.

May 16, 2019

**SELYA**, **Circuit Judge**. In Roe v. Flores-Ortega, 528 U.S. 470 (2000), the Supreme Court held that, as a matter of constitutional law, a defense attorney has a duty to consult with a client about an appeal either when a particular defendant reasonably demonstrated to the attorney that he was interested in appealing or when the circumstances are such that a rational defendant would want to appeal. See id. at 480. The Court went on to hold that when an attorney violates this duty, a presumption of prejudice arises. See id. at 483. The appeal at hand requires us, for the first time, to apply the Flores-Ortega presumption of prejudice in circumstances in which the defendant has previously executed a plea agreement containing a waiver-of-appeal provision. Mindful of the teachings of both Flores-Ortega and Garza v. Idaho, 139 S. Ct. 738 (2019), we reverse the district court's dismissal of petitioner-appellant Toribio Rojas-Medina's petition for post-conviction relief and direct the district court, on remand, to afford him an appropriate opportunity to file a timely notice of appeal.

## I. BACKGROUND

The petitioner is a monolingual Spanish speaker who is a native and citizen of the Dominican Republic. On November 23, 2015, a federal grand jury sitting in the District of Puerto Rico returned a three-count indictment charging him with unlawfully transporting noncitizens (count 1), unlawful reentry into the

- 2 -

United States by a deported noncitizen (count 2), and failure to heave to a vessel (count 3). See 8 U.S.C. §§ 1324(a)(1)(A)(i), 1326(b)(1); 18 U.S.C. § 2237(a)(1). Roughly three months later, the petitioner entered into a plea agreement (the Agreement), wherein he agreed to plead guilty to count 2 (unlawful reentry into the United States by a deported noncitizen). In exchange, the government agreed to dismiss the other two counts. The Agreement memorialized, inter alia, the parties' stipulation to a total offense level (TOL) of 21, but contained no stipulation as to the petitioner's criminal history category (CHC).

In a section of the Agreement entitled "SENTENCING RECOMMENDATION," the parties agreed that they would "recommend a sentence at the lower end of the applicable Guideline Sentencing Range." The parties further agreed that the petitioner "may request that [his] sentence run concurrently with any pending state sentence or state revocation sentence that may be imposed as a result of the current criminal conduct," and "may also argue for a downward departure" on the basis "that his [CHC] substantially overrepresent[ed] the seriousness of [his] criminal conduct or the likelihood that [he] will commit other crimes." Of particular pertinence for present purposes, the Agreement contained a waiver-of-appeal provision under which the petitioner surrendered the right to appeal his conviction and sentence, "provided that [he was] sentenced in accordance with the terms and conditions set

forth in the Sentence Recommendation provisions of [the Agreement]."

A probation officer prepared the presentence investigation report (PSI Report). Consistent with the Agreement, the probation officer recommended a TOL of 21. She assessed the petitioner eight criminal history points, placing him in CHC IV. The recommended guideline sentencing range (GSR) was 57 to 71 months.

Neither party objected to the guideline calculations limned in the PSI Report. The petitioner's then-counsel (whom we shall call "trial counsel") filed a sentencing memorandum in which he urged the district court to vary downward and sentence the petitioner based on a CHC of III. Specifically, trial counsel sought a sentence of 46 months, which fell at the bottom of the GSR for a TOL of 21 and a CHC of III. Trial counsel also requested that the sentence "run concurrently with any pending state sentence."[1]

Prior to sentencing, a different probation officer approached trial counsel, told him that the PSI Report had miscalculated the petitioner's CHC, and said that two additional

---

[1] The petitioner committed the current offense while on post-release supervision in New York. Thus, he was concerned that he might be subject to additional state prison time if the New York authorities moved to revoke his supervision due to his federal offense.

criminal history points would be added.  These additional points served to elevate the petitioner from CHC IV to CHC V.

The district court convened the disposition hearing on May 13, 2016.  The court asked trial counsel whether he needed additional time to prepare, given the change in the probation officer's CHC calculation.  Trial counsel said that he did not need extra time, reasoning that "by adding two additional points, it would only strengthen my position as to the overrepresentation of [the petitioner's] criminal history."  He added that he would still be able to pursue his request for a downward departure.[2]  He then presented his argument for a 46-month sentence.  The government made clear that it was "not objecting or arguing against" such a sentence, which was "discussed as part of the plea negotiations."  Rather, the government was "standing by the [Agreement]" and "recommending a sentence at the lower end of the applicable guideline range based on a [TOL] of 21, according to the [CHC] that the Court accepts."

---

[2] It is evident that trial counsel was using the term "departure" colloquially to include both downward departures and downward variances. Cf. United States v. Santini-Santiago, 846 F.3d 487, 489-90 (1st Cir. 2017) (explaining that departures may only be "justified by reference to specified characteristics of the offense or the offender, or to an early disposition program," whereas variances may be justified by a much broader swath of rationales, "such as 'deterrence,' inducing 'respect for the law,' and effective 'correctional treatment'" (quoting 18 U.S.C. § 3553(a))).  The word "departure" appears to have been given this same broad meaning in the Agreement.

When all was said and done, the district court adopted the probation officer's revised recommendation, assessed ten criminal history points, and placed the petitioner in CHC V. Using the agreed TOL of 21, the court set the GSR at 70 to 87 months. It proceeded to impose a 70-month term of immurement to run consecutively vis-á-vis any state sentence that might be imposed. Trial counsel immediately objected.

Upon completion of the sentencing proceeding, trial counsel had a two-minute conversation with the petitioner at the courthouse cellblock. After this brief chat, the two never spoke again. Judgment entered on May 13, 2016 — the same day that trial counsel filed a so-called "Motion to Reconsider Sentence." The motion papers contended that the 70-month sentence was "extremely harsh" and "greater than necessary to fulfill the purposes of sentencing under [18 U.S.C. §] 3553(a)." Three days later, the district court summarily denied the motion. Trial counsel did not file a notice of appeal, and the fourteen-day appeal period expired on May 27, 2016. At that time, the petitioner was not aware that trial counsel had filed a motion for reconsideration, nor was he aware that it had been denied.

The petitioner was shuttled among several different correctional facilities following the imposition of sentence. After arriving at his destination in mid-July, he wrote to the district court requesting a copy of his docket sheet. The

petitioner stated that he was "in the process of a[n] appeal" and needed "certain information."  The court granted his request on August 2, 2016.  Upon receiving the docket sheet, the petitioner realized for the first time that a notice of appeal had not been filed on his behalf.  With the help of another inmate, he filed a pro se petition to vacate his sentence pursuant to 28 U.S.C. § 2255, claiming that trial counsel was ineffective for failing to file a notice of appeal.

The district court referred the section 2255 petition to a magistrate judge.  See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1).  After appointing post-conviction counsel, the magistrate judge held an evidentiary hearing.  Both the petitioner and trial counsel testified about the details of their two-minute cellblock conversation.  According to the petitioner, he "asked the attorney why they had given me so much time" and made it plain that all along, he had "wanted to appeal because the sentence was too high."  The petitioner testified that trial counsel replied that the sentence "could not be appealed."  When the petitioner insisted that "there had to be a way," trial counsel advised him to file a section 2255 petition.

Trial counsel offered a somewhat different version.  He recalled "discussing . . . the changes to the [PSI Report] and why [the court] finally made the determination that it did."  He thought that he had "mentioned" filing a motion for

- 7 -

reconsideration, but he did not "think [he and the petitioner] ever agreed to it." Importantly, trial counsel claimed to have told the petitioner that although "there was a waiver of appeal, . . . if [the petitioner] thought that there was anything that could be appealed, that he had fourteen days and had to inform me so that I could file something."

The magistrate judge reserved decision and subsequently issued a report and recommendation, recommending that the petitioner's ineffective assistance claim should be granted and that he should be allowed an appropriate opportunity to perfect a delayed appeal. The magistrate judge found that although the petitioner had not explicitly instructed trial counsel to file a notice of appeal,[3] he had manifestly demonstrated an interest in appealing sufficient to trigger trial counsel's constitutional duty to consult. The magistrate judge then concluded that, "[e]ven fully crediting [trial counsel's] testimony, his discussion with [the petitioner at the cellblock] still did not meet the Supreme Court's requirement for a consult." Building on this foundation, the magistrate judge ruled that the Flores-Ortega presumption of prejudice, see 528 U.S. at 483, applied even though the petitioner had signed an appeal waiver. Thus, what remained was "to determine

---

[3] In his appellate briefs, the petitioner does not argue that he explicitly instructed trial counsel to file a notice of appeal. Consequently, we deem any such argument waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

- 8 -

whether [the petitioner] showed . . . a reasonable probability that he would have timely appealed." The magistrate judge then resolved this issue in the petitioner's favor and recommended granting the section 2255 petition.

The government objected, see Fed. R. Crim. P. 59(b)(2), and the district court, exercising de novo review, see Fed. R. Crim. P. 59(b)(3), and without holding a further evidentiary hearing, rejected the magistrate judge's recommendation. The court did not take issue with any of the magistrate judge's findings of fact but, rather, held that Flores-Ortega's presumption of prejudice was inapposite because the petitioner had executed an appeal waiver. In the absence of such a presumption, the petitioner could not (in the district court's view) show any prejudice flowing from trial counsel's failure to file a timely notice of appeal. The court acknowledged, though, that if Flores-Ortega applied notwithstanding the appeal waiver, the petitioner might be able to demonstrate that he had expressed an interest in appealing to trial counsel and that trial counsel's failure to consult with him may have deprived him of an appeal he would otherwise have taken.

The district court issued a certificate of appealability, see 28 U.S.C. § 2253(c), and this timely appeal ensued.

## II. ANALYSIS

When a habeas petitioner appeals from the district court's denial of a section 2255 petition for post-conviction relief following an evidentiary hearing, our review of the court's factual findings is for clear error. See Casiano-Jiménez v. United States, 817 F.3d 816, 820 (1st Cir. 2016). Questions of law, of course, engender de novo review. See id. Here, the magistrate judge made factual findings after an evidentiary hearing. The district court — which did not have the benefit of hearing live testimony — did not take issue with the magistrate judge's factual findings, nor did it make any explicit factual findings of its own. Thus, we treat the district court as "adopt[ing] (albeit implicitly) the well-considered factual findings made by the Magistrate Judge." United States v. J.C.D., 861 F.3d 1, 5 (1st Cir. 2017).

Our starting point is the constitutional guarantee of "the right to the effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)); see U.S. Const. amend. VI. In order to succeed on an ineffective assistance claim, a "defendant must show both that counsel's performance was deficient and that it prejudiced his defense." Janosky v. St. Amand, 594 F.3d 39, 45 (1st Cir. 2010) (citing Strickland, 466 U.S. at 687). In Flores-Ortega, the Supreme Court held that Strickland "applies to claims

- 10 -

. . . that counsel was constitutionally ineffective for failing to file a notice of appeal." 528 U.S. at 477.

With respect to the first element of the Strickland inquiry, the Flores-Ortega Court concluded that a defense attorney's representation is constitutionally deficient if the attorney either "disregards specific instructions from the defendant to file a notice of appeal" or fails (under certain circumstances) to consult with the defendant about an appeal. Id. at 480. Specifically, the Court held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. By "consult," the Court clarified that it meant "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Id. at 478.

With respect to the second element of the Strickland inquiry, the Flores-Ortega Court concluded that a defendant whose attorney fails to carry out a duty to consult with him about an appeal is entitled to a presumption of prejudice. See id. at 483. A defendant is not required to show that an appeal is likely to be successful in order to be entitled to file an appeal out-of-time

- 11 -

based on ineffective assistance of counsel; he need only demonstrate that "counsel's constitutionally deficient performance deprive[d] [him] of an appeal that he otherwise would have taken." Id. at 484.

Until very recently, federal courts were divided as to whether the Flores-Ortega presumption of prejudice applies when a defendant has executed an appeal waiver. Compare, e.g., Witthar v. United States, 793 F.3d 920, 923 (8th Cir. 2015) (holding Flores-Ortega applicable notwithstanding signed appeal waiver); Campusano v. United States, 442 F.3d 770, 776-77 (2d Cir. 2006) (same); Gomez-Diaz v. United States, 433 F.3d 788, 794 (11th Cir. 2005) (same); United States v. Sandoval-Lopez, 409 F.3d 1193, 1198 (9th Cir. 2005) (same), with Nunez v. United States, 546 F.3d 450, 455 (7th Cir. 2008) (holding Flores-Ortega inapplicable because defendant had signed appeal waiver); United States v. Mabry, 536 F.3d 231, 241 (3d Cir. 2008) (same). But this question, previously the subject of a circuit split, has now been settled. In Garza, the Court held four-square that "the presumption of prejudice recognized in Flores-Ortega applies regardless of whether a defendant has signed an appeal waiver." 139 S. Ct. at 749. The Garza Court explained that "while signing an appeal waiver means giving up some, many, or even most appellate claims, some claims nevertheless remain." Id. at 745; see United States v. Teeter, 257 F.3d 14, 24-26 (1st Cir. 2001) (explaining that appeal waiver

- 12 -

does not apply when waiver's scope was not clearly delineated, when plea was not knowing and voluntary, or when enforcing waiver "would work a miscarriage of justice"). The Court stressed that filing a notice of appeal is "a purely ministerial task that imposes no great burden on counsel." Garza, 139 S. Ct. at 745 (quoting Flores-Ortega, 528 U.S. at 474).

Although the defendant in Garza — unlike the petitioner — explicitly instructed his attorney to appeal, we see no reason why this distinction would affect Garza's holding that the Flores-Ortega presumption of prejudice "applies regardless of whether a defendant has signed an appeal waiver." Id. at 749. After all, Flores-Ortega involved a defendant who had not expressly asked his attorney to file an appeal. See 528 U.S. at 477. We hold that Garza applies and, thus, we proceed to analyze the petitioner's claim under the Flores-Ortega framework.

The first question is whether trial counsel had a duty to consult with the petitioner. As we already have explained, the duty to consult is triggered either when "a rational defendant would want to appeal" or when a "particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480. In this instance, the record makes manifest that the petitioner expressed to trial counsel an interest in appealing sufficient to activate trial counsel's duty to consult.

We have yet to consider what qualifies as "reasonably demonstrat[ing]" an interest in appealing. We agree with the weight of authority, though, that a defendant must have done more than merely express his displeasure at sentencing. See United States v. Cong Van Pham, 722 F.3d 320, 325 (5th Cir. 2013); Jackson v. Att'y Gen. of Nev., 268 F. App'x 615, 620 (9th Cir. 2008). Instead, the defendant must have "said something to his counsel indicating that he had an interest in appealing." Cong Van Pham, 722 F.3d at 325 (emphasis in original) (quoting United States v. Cooper, 617 F.3d 307, 313 (4th Cir. 2010)). A duty to consult arises, for example, "when . . . a defendant who received consecutive sentences asked 'about having time run together,'" id. (quoting Frazer v. South Carolina, 430 F.3d 696, 702, 712 (4th Cir. 2005)), or "when a defendant asked after sentencing 'what's next? What can we do now?,'" id. (quoting Palacios v. United States, 453 F. App'x 887, 889 (11th Cir. 2011) (per curiam)).

Here, the magistrate judge credited the petitioner's testimony that he asked trial counsel why he had gotten "so much time." In addition, it is undisputed that the petitioner and trial counsel discussed the possibility of filing a motion for reconsideration. The government argues that a motion for reconsideration and an appeal are materially different. This argument is unavailing.

To begin, "[t]here is simply no such thing as a 'motion to reconsider' an otherwise final sentence." United States v. Ortiz, 741 F.3d 288, 292 n.2 (1st Cir. 2014). In other words, the only vehicle for post-conviction relief that trial counsel discussed with the petitioner did not actually exist — yet the petitioner had no way of knowing that. Unsurprisingly, then — as the district court noted — the petitioner's testimony at the evidentiary hearing "exhibited confusion" and "conflate[d] a notice of appeal with a motion for reconsideration." Rojas-Medina v. United States, 290 F. Supp. 3d 145, 156-57 (D.P.R. 2018). A defendant — especially a defendant who is not an English speaker — should not be required to use magic words in order to trigger his counsel's duty to advise him about his right to appeal. See Cong Van Pham, 722 F.3d at 325. What counts is the substance and thrust of what the defendant says to counsel.

In the case at hand, the petitioner made it luminously clear that he was dissatisfied with the sentence imposed and interested in whatever relief might be available. No more was exigible to ground the conclusion that the petitioner reasonably demonstrated to his lawyer his interest in appealing, thus triggering the lawyer's duty to consult with him about the advantages and disadvantages of taking an appeal.

A question remains as to whether trial counsel fulfilled his duty to consult. We think not. Trial counsel's two-minute

chat with the petitioner, without more, was insufficient to discharge this duty. At a minimum, trial counsel was required to advise his client about the pros and cons of taking an appeal, and then to make a reasonable effort to ascertain his client's wishes. See Flores-Ortega, 528 U.S. at 478. Even if we were to credit trial counsel's testimony that he told the petitioner that "if he thought . . . there was anything that could be appealed . . . he had fourteen days" within which to inform trial counsel that he wanted to appeal — a matter on which we take no view — that statement did not shed any glimmer of light on the advantages or disadvantages of taking an appeal.

In an attempt to sidestep this hurdle, the government points to conversations between the petitioner and trial counsel prior to sentencing, in which trial counsel "advised [the petitioner] about the consequences of his appellate waiver." The government asserts that, examining the totality of the circumstances (including these pre-sentencing conversations), "[trial counsel] did more than enough to effectively 'consult' with [the petitioner] about an appeal."

This assertion defies reason. Even if we were disposed to consider the pre-sentencing conversations, it appears that trial counsel did no more than inform the petitioner that his appeal waiver would prevent him from filing an appeal. That may or may not have been true. See Teeter, 257 F.3d at 24-26

(cataloguing exceptions to appeal waiver's preclusive effect). In all events, we agree with the Fifth Circuit that "[c]ounsel's duty to [consult] requires more than simply notice that an appeal is available or advice that an appeal may be unavailing." White v. Johnson, 180 F.3d 648, 652 (5th Cir. 1999).

Our inquiry does not end with the conclusion that trial counsel did not properly discharge his duty to consult. It remains for us to determine whether counsel's constitutionally deficient performance prejudiced the petitioner by "depriv[ing] [him] of an appeal that he otherwise would have taken." Flores-Ortega, 528 U.S. at 484. The Supreme Court has cautioned that although this question ultimately "will turn on the facts of the particular case[,] . . . evidence that there were nonfrivolous grounds for appeal or that the defendant promptly expressed a desire to appeal will often be highly relevant in making this determination." Id. at 472.

Here, the petitioner promptly expressed a desire to appeal. At his first possible opportunity to speak with counsel after sentencing, he expressed dissatisfaction with his sentence and an interest in pursuing post-conviction relief. He then requested his docket sheet from the district court soon after arriving at his designated custodial facility. Upon realizing that no appeal had been taken, he promptly sought assistance and perfected a section 2255 petition. Cf. Frazer, 430 F.3d at 712

- 17 -

(noting that petitioner's "tenacity in pursuing habeas relief . . . bolsters th[e] conclusion" that he would have appealed).

To cinch the matter, we find that the petitioner has at least one nonfrivolous ground for appealing, notwithstanding his appeal waiver. He has made it pellucid that he wishes to challenge, inter alia, the district court's determination that his sentence should run consecutive to, not concurrent with, any state sentence. In United States v. Maldonado-Escarfullery, we held that an appeal of a consecutive sentence fell beyond the reach of an appeal waiver when "the plea agreement did not make any recommendation as to whether the sentence should run concurrently or consecutively." 689 F.3d 94, 97 n.2 (1st Cir. 2012). Several years later, we reached the same conclusion in United States v. Santiago-Burgos, 750 F.3d 19, 23 (1st Cir. 2014).

The petitioner has a plausible argument that the same is true here. The SENTENCING RECOMMENDATION provision in his case did not specify whether his sentence should run concurrently or consecutively, yet the district court chose the latter. It follows that the petitioner's proposed challenge to the district court's refusal to run his sentence concurrently with any state sentence that might be imposed constitutes a nonfrivolous ground of appeal. After all, an argument need only be colorable to qualify as nonfrivolous, see United States v. Aguilera, 179 F.3d 604, 607 (8th Cir. 1999); it does not have to be a sure winner.

- 18 -

To say more would be superogatory. We hold that trial counsel's failure to consult deprived the petitioner of an appeal that he otherwise would have taken.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, we <u>reverse</u> the judgment of the district court and <u>remand</u> with instructions to vacate the judgment in the underlying criminal case and reenter it so that the petitioner may enjoy a fair opportunity to file a timely notice of appeal. For these purposes, the district court shall follow the procedural roadmap charted by this court in <u>United States</u> v. <u>Torres-Otero</u>, 232 F.3d 24, 31-32 (1st Cir. 2000). <u>Mandate shall issue forthwith</u>; without prejudice, however, to the right of either party to file, within customary time limits, petitions for rehearing or rehearing en banc.