17-2715-cr
*United States v. Wright*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term 2018

(Submitted: May 21, 2019          Decided: December 19, 2019)

No. 17-2715-cr

_____

UNITED STATES OF AMERICA,

*Appellee,*

-v.-

ANDREW WRIGHT,

*Defendant-Appellant.*

_____

Before:      LIVINGSTON, CARNEY, *Circuit Judges*, RAMOS, *District Judge*.[*]

Defendant-Appellant Andrew Wright ("Wright") filed a notice of appeal with this Court more than three years after he was sentenced in the United States District Court for the Western District of New York (Siragusa, *J.*) to 240 months' imprisonment on two counts of assault on a law enforcement officer in violation of 18 U.S.C. § 111(a)(1), (b).   He argues that he was given unconstitutionally ineffective assistance of counsel below, as his trial attorney failed to file a requested

_____

[*] Judge Edgardo Ramos of the United States District Court for the Southern District of New York, sitting by designation.

1

notice of appeal on his behalf. As a result, he requests a remand to the district court for entry of a new judgment from which he can take a direct appeal, under the auspices of *United States v. Fuller*, 332 F.3d 60, 65 (2d Cir. 2003). We conclude that *Fuller* does not apply here, as it is unclear whether Wright could have filed a timely petition for habeas relief in the district court at the time he filed his untimely notice of appeal with this Court. Given that answering this question requires further factual development, we DISMISS Wright's appeal as untimely, and REMAND to the district court with instructions to convert Wright's notice of appeal into a petition for habeas relief and assess whether such petition would be timely under 28 U.S.C. § 2255(f)(4).

FOR APPELLEE:                                    Monica J. Richards, *for* James P. Kennedy, Jr., United States Attorney for the Western District of New York, Buffalo, NY, *for United States of America*.

FOR DEFENDANT-APPELLANT:                         Arza Feldman, Feldman & Feldman, Uniondale, NY, *for Andrew Wright*.

DEBRA ANN LIVINGSTON, *Circuit Judge*:

This case arises from an untimely notice of appeal. Defendant-Appellant Andrew Wright ("Wright") was sentenced in the United States District Court for the Western District of New York (Siragusa, *J.*) on May 2, 2014, to 240 months' imprisonment, following a jury trial at which he was convicted of two counts of assault on a law enforcement officer in violation of 18 U.S.C. § 111(a)(1), (b). While the transcript of his sentencing hearing suggests that Wright wanted to appeal and that his trial attorney was told to file a notice of appeal on his behalf,

2

no such notice was ever filed. On August 25, 2017, more than three years after he was sentenced, Wright filed a notice of appeal *pro se* with this Court.

Wright argues that he undisputedly had unconstitutionally ineffective assistance of counsel below due to his trial attorney's failure to file a timely notice of appeal on his behalf. *See Garza v. Idaho*, 139 S. Ct. 738, 747 (2019) ("So long as a defendant can show that 'counsel's constitutionally deficient performance deprive[d him] of an appeal that he otherwise would have taken,' courts are to 'presum[e] prejudice with no further showing from the defendant of the merits of his underlying claims.'" (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000) (alterations in original))). For that reason, Wright contends that under this Court's precedent in *United States v. Fuller*, 332 F.3d 60, 65 (2d Cir. 2003), he is entitled to a remand to the district court for entry of a new judgment from which he can take a timely direct appeal.

We disagree with Wright that *Fuller* can be applied here, given that it is unclear, at best, whether a petition for habeas corpus relief under 28 U.S.C. § 2255 filed on August 25, 2017, the date of his notice of appeal, would have been timely. As such, a *Fuller* remand, with no further analysis of Wright's actions during the three years between his sentencing and attempt to appeal, would circumvent and,

3

indeed, upend Congress's provisions permitting timely but limiting untimely post-conviction petitions pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). Nevertheless, we remand Wright's case to the district court with instructions to convert his untimely notice of appeal into a habeas petition and for consideration of whether his petition is timely under § 2255(f)(4), either with or without application of equitable tolling.

## BACKGROUND

### I. Factual Background[1]

In May 2010, while Wright was being held at Buffalo Federal Detention Center, he ran away from several "contract detention officers" on a "shakedown team," *i.e.*, a team conducting random cell searches. Def.-App. Br. 5. After observing him run away, two officers—Christopher Cichocki and Matthew Irons—decided they should search Wright's cell. They observed him leaving his cell "holding a thermal shirt in his left hand." *Id.* When they approached, he punched the two officers before being wrestled to the ground. Both officers

---

[1] The factual background presented here is derived from facts found at Wright's jury trial, which was held over several days in November 2011. *See* No. 10-cr-6166 (CJS) (MWP) (W.D.N.Y.), ECF Nos. 62–64.

suffered injuries and were treated by medical staff either at the detention center (Irons) or off its grounds (Cichocki).

## II. Procedural History

A criminal complaint was filed against Wright in the United States District Court for the Western District of New York on June 7, 2010. Wright pled not guilty, and following a two-day trial in November 2011 the jury convicted him on both counts of assault on a law enforcement officer, in violation of 18 U.S.C. § 111(a), (b).

On May 2, 2014, Wright appeared before the district court for sentencing. Although his lawyers had attempted to review his Pre-Sentence Report ("PSR") with him, he declined to read it and explicitly affirmed that denial to the district court, saying he was "not worried about the sentence."[2] Appendix ("App'x") 40. After reviewing the PSR and the sentencing factors under 18 U.S.C. § 3553, the district court sentenced Wright to two concurrent terms of 240 months'

---

[2] The same day he was sentenced in this case, the same district court judge sentenced Wright in a separate case to, *inter alia*, four concurrent life sentences. *See* Judgment, No. 10-cr-6128 (CJS) (JWF) (W.D.N.Y. May 9, 2014), ECF No. 515. Although the attorney who represented Wright in the district court in the instant case, Richard M. Roberts, was also counsel of record on that separate case for some years, he subsequently withdrew, and another attorney was responsible for filing the notice of appeal in that case. That other lawyer timely did so, and that other case is currently pending on appeal in this Court under Docket No. 14-1027.

imprisonment—a sentence within the range the district court calculated under the United States Sentencing Guidelines. Wright was also ordered to pay mandatory special assessments totaling $200, and fines totaling $1,000.

After pronouncing Wright's sentence, the district court asked Wright if he had any questions. Wright said that he would not be able to afford his lawyer, Richard M. Roberts ("Roberts"), at the next stage of the proceedings, but that he was "going to appeal this case." App'x 51. The district court explained the process of attorney withdrawal and how Wright could get new counsel from this Court on appeal. The docket entry detailing the sentencing proceeding reflects that the district court granted Roberts's "oral application to withdraw as defendant's counsel for the appeal." No. 10-cr-6166 (W.D.N.Y. May 2, 2014), ECF No. 72. Nevertheless, the district court asked that Roberts, "before [he is] relieved, file a Notice of Appeal" in Wright's case. App'x 52.

\*    \*    \*

But Roberts did not file a notice of appeal on Wright's behalf. No notice of appeal was filed until several years later, on August 25, 2017, when Wright himself filed a notice of appeal with this Court *pro se*. On July 20, 2018, the government moved to dismiss Wright's appeal as untimely. On September 4, 2018, a panel of

6

this Court referred the government's motion to the merits panel and specifically directed the parties to address (1) "whether a petition pursuant to 28 U.S.C. § 2255 raising the ineffective assistance claim would be time-barred under § 2255(f)(1), (4), because the notice of appeal was filed three years after the conviction," and (2) "if so, whether a *Fuller* remand is available." Motion Order at 1, No. 17-2715 (2d Cir. Sept. 4, 2018), ECF No. 98. The case was submitted to this panel on May 21, 2019.

**DISCUSSION**

**I**

In *United States v. Fuller*, 332 F.3d 60 (2d Cir. 2003), *abrogated on other grounds by United States v. Frias*, 521 F.3d 229, 232 (2d Cir. 2008), a panel of this Court considered the appeal of Leyton Wint, whose notice of appeal was filed several months after the time to do so expired under Federal Rule of Appellate Procedure ("FRAP") 4(b). *See* 332 F.3d at 64. All parties agreed that Wint's counsel failed to file his requested notice of appeal in a timely manner, and that such failure "constitutes ineffective assistance of counsel, entitling the defendant to relief." *Id.* We noted that if Wint had instead filed a motion under 28 U.S.C. § 2255, such a finding of ineffective assistance would warrant a remand either for resentencing

7

or for entry of a new judgment. *Id.* (citing *Garcia v. United States*, 278 F.3d 134, 138 (2d Cir. 2002) (giving the district court the choice to either resentence the defendant or enter a new judgment imposing the same sentence)).

As the government conceded that Wint would be able to challenge the current judgment successfully under § 2255, it asked this Court to "remand for entry of a new judgment to replace the existing judgment." *Id.* Thus, what was left for the Court to decide was whether it should (1) nevertheless dismiss Wint's appeal outright, thereby forcing him either to file a § 2255 motion that both parties agreed would clearly be successful, or (2) take limited action despite the untimely notice of appeal to order some version of relief—entry of a new judgment or an order to resentence. *See id.* at 64–65.[3]

The *Fuller* Court noted three "unfortunate consequences" that might arise if it were simply to dismiss Wint's appeal and order no further action. *Id.* at 65. First, the Court was concerned with "the waste of time and judicial resources to

---

[3] This question was complicated by the fact that at the time *Fuller* was decided, this Court considered the Federal Rules of Appellate Procedure to be jurisdictional. *See Fuller*, 332 F.3d at 64. As noted above, however, this has been abrogated by *Frias*, which explained that while FRAP 4(b) is not jurisdictional, "[w]hen the government properly objects to the untimeliness of a defendant's criminal appeal, Rule 4(b) is mandatory and inflexible." *Frias*, 521 F.3d at 234. Here, the government properly objected to the untimeliness of Wright's appeal by moving to dismiss.

8

process the section 2255 motion" Wint would have to file, given that all parties agreed it would succeed and required no further factual development prior to its adjudication. *Id.* Second, the Court was concerned that by forcing Wint to file a § 2255 motion, he would "use up" his initial petition and be forced to comply with the more stringent standard for successive petitions during any subsequent habeas proceedings. *Id.*[4] Lastly, the Court was concerned that "dismissal of the appeal would leave the current judgment in place, at least until the granting of a motion under section 2255, thereby risking expiration of a substantial part and possibly all of the one-year limitations period of 28 U.S.C. § 2255." *Id.*

Given these concerns, and the fact that "the judgment is vulnerable to being set aside in any event," the Court declined to dismiss Wint's case and require him to file a § 2255 motion. *Id.* at 66. Instead, the Court dismissed Wint's appeal as untimely, but remanded the case to the district court with instructions to vacate the judgment and enter a new one from which a timely appeal could be taken. *Id.* at 65.

---

[4] This is no longer a concern, as habeas petitions to reinstate direct appeal rights do not render "a later collateral proceeding a duplicative attack on the conviction." *Carranza v. United States*, 794 F.3d 237, 241 (2d Cir. 2015) (internal quotation marks omitted).

In the years since its creation, this so-called "*Fuller* remand" has been used only sparingly. *See, e.g.*, *United States v. Medley*, 300 F. App'x 14, 16 (2d Cir. 2008) (remanding for entry of a new judgment following defendant's attorney's concession that he did not file a requested notice of appeal in a timely fashion). Furthermore, it has been cabined to cases presenting the same distinctive sets of facts that motivated *Fuller* itself—cases where the defendant undisputedly asked his lawyer to file a notice of appeal on his behalf, and where the attorney nonetheless did not do so. *See United States v. Moreno-Rivera*, 472 F.3d 49, 52 (2d Cir. 2006) (declining to allow a *Fuller* remand where the Court could not "ascertain on this record whether Moreno–Rivera actually gave timely instructions to his trial counsel to file an appeal"); *see also Campusano v. United States*, 442 F.3d 770, 775 (2d Cir. 2006) (finding *per se* ineffective assistance only "where counsel does not file a *requested* notice of appeal" (emphasis added)). Where the record of what a defendant did or did not ask his lawyer to do is less clear-cut, and thus further factual development is needed to ascertain whether a claim of ineffective assistance exists, a § 2255 motion is still necessary. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[I]n most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance."). As the

10

*Fuller* remedy thus applies to such a narrow set of circumstances, we have expressed concerns that "defendants may seek the *Fuller* remedy at a time when a habeas petition would be timely, only to have a panel hold after expiration of the AEDPA limitations period" that such a remedy does not apply on the facts before it. *United States v. Lajud-Pena*, 655 F. App'x 35, 36 (2d Cir. 2016).

Here, Wright appears to satisfy the factual predicate for a *Fuller* remand in that the record demonstrates his attorney did not file a requested notice of appeal in a timely manner, which (at least absent additional facts not in the record here) constitutes *per se* constitutionally ineffective assistance. *See Garza*, 139 S. Ct. at 747. But Wright's case presents a new twist: he is *not* a defendant who chose to file an untimely notice of appeal instead of a habeas petition, but who is nonetheless still clearly within the time permitted under § 2255. Instead, given the passage of time since his sentencing, Wright may be unable to file *any* timely § 2255 petition. As a result, we conclude that *Fuller* does not apply to Wright's case.

## II

As discussed above, Wright filed an untimely notice of appeal years after his attorney failed to file a timely notice, thereby invoking our precedent in *Fuller*.

11

If, however, he had instead filed a habeas petition, he would have had to contend with AEDPA's time limitations encouraging prompt petitions for post-conviction relief. Having just explored the general contours of the *Fuller* remand, we next lay out the basic tenets of AEDPA's system. We then consider how the two interact to make the *Fuller* remedy necessarily inapplicable to Wright's case.

**A**

AEDPA imposes a one-year statute of limitations on motions to set aside sentences imposed, *inter alia*, "in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a), (f). This one year runs from the last of a number of "triggering events," *Rivas v. Fischer*, 687 F.3d 514, 533 (2d Cir. 2012). These include, as relevant to Wright's case, "(1) the date on which the judgment of conviction [became] final," and "(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(1), (4).

When no notice of appeal (or other post-conviction motion) is filed in a defendant's case, the Federal Rules of Appellate Procedure provide that the conviction becomes final fourteen days after judgment is entered. *See* FRAP 4(b)(1)(A)(i). Pursuant to 28 U.S.C. § 2255(f)(1), the statute of limitations to file a

habeas petition runs one year from that day. In Wright's case, this date came and went, and no petition was filed.

In cases in which an attorney fails to file a requested notice of appeal on behalf of her client, however, we have allowed that "the date on which the facts supporting [the defendant's claim of ineffective assistance] could have been discovered," *see* 28 U.S.C. § 2255(f)(4), may very well be later than the day the judgment became final. In *Wims v. United States*, 225 F.3d 186 (2d Cir. 2000), defendant John C. Wims pled guilty, but told his attorney that "a reduction in his sentence was worth pursuing" and presumed his attorney would file an appeal. *Id.* at 188 (internal quotation marks and brackets omitted). Nevertheless, Wims's attorney failed to file a notice of appeal, and thus his conviction became final within several weeks, pursuant to FRAP 4(b). Approximately 16 months later, Wims requested the docket sheet in his case, at which point he discovered that no appeal had been filed. *See id.* Wims then filed a *pro se* motion under § 2255 claiming ineffective assistance, which was received by the district court about 17 months after Wims's conviction became final.

This Court determined that Wims's petition was timely "if his claim for habeas relief accrued no earlier than one year prior to the date of filing" in the

district court. *Id.* at 189. Accordingly, it was error for the district court to deem § 2255(f)(4) a method for "extending" the statute of limitations, rather than as a "reset[]" of the statute of limitations, "moving it from the time when the conviction became final, to the later date on which the particular claim accrued." *Id.* at 189–90 (internal quotation marks and brackets omitted). Given that the statute of limitations would "reset" and allow for an additional year following Wims's discovery of his attorney's ineffective assistance, we concluded that "[t]he proper task in a case such as this one is to determine when a duly diligent person in petitioner's circumstances would have discovered that no appeal had been filed." *Id.* at 190.

We noted in *Wims* that the petitioner was clearly not required to discover that no appeal had been filed "the very day on which [his] conviction became final absent appeal," and that determining the precise date on which a defendant *should* have discovered his attorney's failure to appeal is therefore "a fact-specific issue." *Id.* Accordingly, we remanded for the district court to consider "when, in exercising due diligence, Wims would have discovered his counsel's failure to appeal," giving consideration to, *inter alia*, "the details of Wims' post-sentence conversation with his lawyer and . . . the conditions of his confinement in the

period after" his conviction became final. *Id.* at 190–91. Nevertheless, we determined in the first instance that a five-month delay in learning of an attorney's failure to appeal "is not so clearly unreasonable that it plainly appears from the face of [an] appellant's petition and supporting papers that he is barred from habeas relief." *Id.* at 191.

In addition, the deadlines created by 28 U.S.C. § 2255(f) are not jurisdictional—"AEDPA's statute of limitations . . . 'does not set forth an inflexible rule requiring dismissal whenever its clock has run.'" *Rivas*, 687 F.3d at 537 (quoting *Holland v. Florida*, 560 U.S. 631, 645 (2010) (internal quotation marks omitted)). This is because although "AEDPA seeks to eliminate delays in the federal habeas review process," it does not do so at the expense of "basic habeas corpus principles," or prior law that a "petition's timeliness [has] always [been] determined under equitable principles." *Holland*, 560 U.S. at 648. As a result, even in the wake of AEDPA, a petitioner is entitled to equitable tolling of the one-year statute of limitations if he shows: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* at 649 (internal quotation marks omitted).

To warrant equitable tolling, "the circumstances of a case must be 'extraordinary.'" *Id.* at 652. When determining what constitutes "extraordinary" circumstances, we have observed that "the proper inquiry is not how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period." *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008). For example, "a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." *Holland*, 560 U.S. at 651–52 (internal quotation marks omitted). This is because "a lawyer is the agent of his client, [so] the client generally must bear the risk of attorney error." *Rivas*, 687 F.3d at 538 (internal quotation marks omitted). But when "attorney negligence . . . [is] so egregious as to amount to an effective abandonment of the attorney-client relationship," extraordinary circumstances may be found. *Id.*; *see also Holland*, 560 U.S. at 652 (finding extraordinary circumstances when attorney "failed to file [defendant's] federal petition on time despite [defendant's] many letters that repeatedly emphasized the importance of his doing so" and "failed to communicate with his client over a period of years, despite various pleas from [defendant] that [the

16

lawyer] respond to his letters"); *Maples v. Thomas*, 565 U.S. 266, 281 (2012) (concluding, in context of state procedural default, that extraordinary circumstances existed as "[a] markedly different situation is presented . . . when an attorney abandons his client without notice, and thereby occasions the default"); *Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003) (distinguishing "extraordinary" actions—*e.g.*, failure to file a petition, do any research, or meet with a client—from "simple mistakes" that do not warrant equitable tolling).

Even when extraordinary circumstances exist, however, a petitioner must demonstrate diligence to qualify for equitable tolling. "In the attorney incompetence context, . . . the reasonable diligence inquiry focuses on the purpose for which the petitioner retained the lawyer, his ability to evaluate the lawyer's performance, his financial and logistical ability to consult other lawyers or obtain new representation, and his ability to comprehend legal materials and file the petition on his own." *Doe v. Menefee*, 391 F.3d 147, 175 (2d Cir. 2004). The only diligence required for the application of equitable tolling is "reasonable diligence"—we do not require "maximum feasible diligence." *Holland*, 560 U.S. at 653 (internal quotation marks omitted). Even so, "we expect [even] *pro se*

17

petitioners to know when the limitations period expires and to understand the need to file a [habeas] motion within that limitations period." *Doe*, 391 F.3d at 177.

**B**

"Congress enacted AEDPA to advance the finality of criminal convictions." *Mayle v. Felix*, 545 U.S. 644, 662 (2005). It would be "anomalous," then, *id.*, for us to set aside the entirety of the above-described system merely because Wright chose to file an untimely notice of appeal—thereby invoking our precedent in *Fuller*—rather than a habeas petition under § 2255.

The reasoning of *Fuller*, which focused primarily on judicial efficiency, buttresses this conclusion. *See Fuller*, 332 F.3d at 65. *Fuller*'s desire to expediently resolve a clearly meritorious ineffective assistance claim in a situation "where the judgment is vulnerable to being set aside in any event," *id.* at 66, does *not* as easily extend to a situation where the availability of a timely § 2255 motion is less clear. By granting a *Fuller* remand in this case, we would be circumventing numerous requirements otherwise applied to post-conviction claims under AEDPA. Wright would not be required to establish (1) when he reasonably should have discovered his attorney's failure to file a notice of appeal or (2) the

18

existence of either of the requirements for equitable tolling. Instead, all he would have to show is an unfiled—but clearly requested—notice of appeal.

Moreover, if we were to expand *Fuller* to such a case, Wright would theoretically be entitled to make this showing not only three years after sentencing (as he did in this case), but also at *any* point during his twenty-year sentence. We cannot countenance a rule that forces the government to defend against a defendant's attack to his conviction years—or even decades—after that conviction becomes final. Memories fade, and the existence of evidence to prove or disprove a defendant's claims becomes less and less available. Lastly, not only would this judicially created loophole run counter to AEDPA's goal of "advanc[ing] the finality of criminal convictions" by encouraging prompt petitions; it also would inexplicably exempt only a certain class of defendants from the statute's otherwise "tight time line." *See Mayle*, 545 U.S. at 662; *see also Doe*, 391 F.3d at 177.

As a result, we do not see how the *Fuller* remedy can be divorced from the system of limitations for habeas motions. When a defendant—as the defendant in *Fuller* himself did—files an untimely notice of appeal but is still well within the limits set out under § 2255, we affirm our reasoning that a remand to set aside a judgment "vulnerable to being set aside in any event," *Fuller*, 332 F.3d at 66, is an

efficient and reasonable use of judicial resources. If, however, the untimely notice of appeal would *not* clearly have been timely had it been filed instead as a habeas petition at the district court under § 2255, we will not so easily allow a defendant to circumvent AEDPA's carefully calibrated system. In such situations, a *Fuller* remand is not warranted. Instead, we must consider—to the extent appropriate, given our position as an appellate court—how that notice of appeal would have fared had it been filed instead under § 2255.

Here, Wright filed his untimely notice of appeal with this Court on August 25, 2017. Had he instead filed a habeas petition, it clearly would not have been timely under § 2255(f)(1): given that his conviction became final fourteen days after it was issued, the statute of limitations under § 2255(f)(1) expired on May 22, 2015.

We express no opinion on whether Wright could have filed a timely motion under § 2255(f)(4), however, or whether he qualified for equitable tolling. Had Wright filed a § 2255 motion on August 25, 2017 in the district court *instead* of a notice of appeal, for it to be timely, either (1) the fact that his attorney did not file a notice of appeal must not have been discoverable using due diligence prior to August 25, 2016; or (2) Wright must qualify for equitable tolling for some period

20

of time between the day by which he *should* have discovered the facts of his ineffective assistance claim and the latest possible beginning of the § 2255(f)(4) limitations period, *i.e.,* August 25, 2016. These are "fact-specific issue[s]." *Wims*, 225 F.3d at 190. As such, they are better resolved by the district court after further development of the record.

In a previous summary order, we dismissed a defendant's appeal with instructions to convert his untimely notice of appeal into a § 2255 motion. *See Lajud-Pena*, 655 F. App'x at 37. There, because the defendant had pursued a *Fuller* remand to which it was ultimately determined he was not entitled, he missed the deadline to file a petition for habeas relief. Upon noting the defendant's timeliness problem, we asked the parties whether we could simply "remand for the district court to convert the notice of appeal." *Id.* at 36. The government noted that under *Adams v. United States*, 155 F.3d 582 (2d Cir. 1998), a motion could not be recharacterized as a habeas petition under § 2255 without a defendant's consent. *See Lajud-Pena*, 655 F. App'x at 37. When *Adams* was decided, however, it was an open question whether such recharacterization could cause a defendant prejudice by causing all subsequent § 2255 motions to be deemed successive. A subsequent opinion by this Court characterized a § 2255 motion

that regains a defendant's direct appeal right as *not* exhausting that defendant's initial § 2255 motion. *See Urinyi v. United States*, 607 F.3d 318, 321 (2d Cir. 2010). Nevertheless, "in an abundance of caution," we provided in *Lajud-Pena* that the conversion could happen only after providing the defendant an opportunity to withdraw his motion instead. *Lajud-Pena*, 655 F. App'x at 37.

While we will afford Wright the same opportunity to withdraw here, we observe that the changes in the law noted by *Lajud-Pena* suggest that withdrawal would be unwise. Although we express no opinion on the ultimate outcome following conversion, Wright *may* be able to demonstrate to the district court that a habeas petition filed at the time he filed his notice of appeal would be timely under § 2255(f)(4) or would qualify for equitable tolling so as to become timely. If he is successful, not only would Wright be entitled to a new judgment from which to take his direct appeal, but he also would not have exhausted any opportunity that he would otherwise have had to file an initial habeas petition raising other issues.

If he were to withdraw, however, a new § 2255 motion filed subsequent to this opinion is extremely unlikely to fare so well, given the passage of almost five years since his sentencing in the district court. As a result, on remand we instruct

22

the district court—after it solicits consent from Wright—to convert Wright's August 25, 2017 notice of appeal into a petition for habeas relief and to assess whether his petition would be timely under 28 U.S.C. § 2255(f)(4), with or without application of equitable tolling—an issue on which we express no view.

## CONCLUSION

For the foregoing reasons, we DISMISS Wright's appeal, and REMAND to the district court for proceedings consistent with this opinion.